IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

COLLEEN MICHELLE SMITH, as
Administratrix of the
Estate of David M. Smith,

        Plaintiff,

      v.                              CIVIL NO. 2:20-CV-47
                                          (KLEEH)

EDWARD W. CLARK, JR. et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

This matter is scheduled for trial on February 26, 2024. Multiple motions in limine are currently pending. The Court will address each in turn.

**I.    DISCUSSION**

**A.   Plaintiff's First Motion in Limine [ECF No. 139]**

Plaintiff's first motion in limine is an omnibus motion [ECF No. 139]. Defendants filed a response [ECF No. 169].

1. Plaintiff asks the Court to preclude mention of payment to Plaintiff from a collateral source. Defendants do not object. Therefore, this motion is **GRANTED**.

2. Plaintiff asks the Court to preclude mention that Plaintiff's or Smith's family members have been involved in unrelated claims, suits, or criminal actions. Defendants do not object. Therefore, this motion is **GRANTED**.

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

3.   Plaintiff asks the Court to preclude mention that Plaintiff failed to call a witness to testify.  Defendants do not object, so long as they are afforded the same relief.  This motion is **GRANTED** and applies to both parties.

4.   Plaintiff asks the Court to review any proposed photographs, illustrations, demonstrative exhibits, or video outside the presence of the jury before informing jury of its existence.  Defendants do not object, so long as they are afforded the same relief.  Therefore, this motion is **GRANTED.**

5.   Plaintiff asks the Court to preclude mention of the effect of a claim, suit, or judgment upon the taxpayers.  Defendants do not object.  Therefore, this motion is **GRANTED.**

6.   Plaintiff asks the Court to preclude comments relating to tort reform.  Defendants do not object.  Therefore, this motion is **GRANTED.**

7.   Plaintiff asks the Court to preclude any indication that any defendant will have to pay a judgment entered.  Defendants do not object, so long as Plaintiff is precluded from making the opposite argument: that Defendants will not have to pay any judgment entered.  This motion is **GRANTED** and applies to both parties.

8.   Plaintiff asks the Court to preclude Defendants from calling a lay or expert witness to testify during Plaintiff's case

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

in chief.   Defendants object.   Defendants may wish to call Plaintiff's emergency medicine expert, Dr. William Smock, to testify about the EMS Defendants' negligence.[1]   Should Defendants do so, they argue that it would make sense to do it during Plaintiff's case-in-chief.   This motion is **HELD IN ABEYANCE.**

9.   Plaintiff asks the court to preclude Defendants' witnesses from expressing remorse.   Defendants do not object, as long as the ruling would not encompass the deputies' deposition testimony that, with the benefit of hindsight, they would have had EMS transport Smith.   This motion is **GRANTED** to the extent that Defendants may not explicitly express remorse or that they are "sorry."

10.   Plaintiff asks the Court to preclude any argument or evidence that Plaintiff, Smith, or Plaintiff's family members were comparatively negligent.   Defendants do not object.   Therefore, this motion is **GRANTED.**

11.   Plaintiff asks the Court to remove the settled defendants from any caption of the case that will be shown to the jury.   Defendants do not object.   Therefore, this motion is **GRANTED.**

---

[1] The "EMS Defendants" are the Weston Lewis County Emergency Ambulance Authority, Rocky Shackleford, and Nancy Ryder, who previously settled with Plaintiff and have been dismissed from the case.

### MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

12.  Plaintiff asks the Court to permit Plaintiff to submit a medical expense listing, outlining the medical bills incurred, in lieu of the medical bills themselves.  Defendants do not object.  Therefore, this motion is **GRANTED**.

13.  Plaintiff asks the Court to preclude Defendants from mentioning that Plaintiff has moved to exclude certain matters from the jury's consideration.  Defendants do not object, so long as the same applies to Plaintiff.  This motion is **GRANTED** and applies to both parties.

### B.  Plaintiff's Second Motion in Limine [ECF No. 141]

In her second motion in limine, Plaintiff asks the Court to exclude any argument or evidence relating to the possibility that Smith was dropped or otherwise injured while in the hospital.  Similarly, Plaintiff asks the Court to preclude any assertion or implication that Smith's treatment providers at the hospital (or their agents) were negligent or caused or contributed to Smith's injuries.

According to Plaintiff, Smith's treating physicians and Defendants' expert Anthony Pizon testified that there was no evidence that Smith was injured in the hospital.  Still, Plaintiff argues, Defendants' expert Wayne Ross "conjectures" that Smith suffered injuries from "medical effects," meaning trauma from medical procedures, which Ross said "could" have included placing

### MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

a mask or EEG stickers on Smith.  Ross stated that EEG stickers "could cause contusion" and that his injuries "could be due to other invasive maneuvers."  Smith's treatment providers testified that they had never seen injuries caused by EEG stickers and had never seen head injuries due to medical equipment or medical effects.  As such, Plaintiff argues that Ross's testimony about medical effects is pure speculation and should be excluded.  Plaintiff further argues that no evidence has indicated that Smith's medical providers at the hospital (or their agents) were negligent or caused any injury.

In response, Defendants clarify Ross's opinion: that Smith did not suffer traumatic brain injury.  Ross concluded that Smith did not suffer blunt force injuries to the head caused by facial strikes, nose compression, mouth compression, hand contact, foot contact, or knee contact.  Regarding medical effects, Ross merely stated that he could not rule out the possibility that certain abrasions and contusions on Smith's head were due to medical effects.

Ross came to his conclusions by using differential diagnosis, which is "a standard scientific technique of identifying the cause of a medical problem by eliminating the likely causes until the probable one is isolated."  Westberry v. Gislaved Gummi AB, 178 F.3d 257, 262 (4th Cir. 1999).  "[A] reliable differential

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

diagnosis provides a valid foundation for an expert opinion." Id. at 263. Defendants assert that they have never argued or implied that Smith was dropped or that his treatment providers at the hospital were negligent, and they do not intend to do so as trial.

The Court agrees with Defendants that Ross's testimony regarding medical effects is admissible as part of the basis of his opinions regarding blunt force injuries and traumatic brain injury. Ross may testify that, as part of his differential diagnosis, he could not rule out the possibility that certain abrasions and contusions were caused by medical effects. The differential diagnosis is part of the facts and data upon which Ross relied in coming to his conclusions. For these reasons and the reasons asserted by Defendants, the motion in limine is **DENIED** to the extent that it seeks to preclude Ross's comments and is **GRANTED** to the extent that it seeks to prevent Defendants from arguing that Smith was dropped at the hospital or that hospital treatment providers were negligent [ECF No. 141].

**C.   Defendants' First Motion in Limine [ECF No. 142]**

In Defendants' first motion in limine, they seek to preclude references to George Floyd at trial. Defendants move the Court under Rules 401, 402, and 403 of the Federal Rules of Evidence to preclude Plaintiff, her attorneys, or her witnesses from referring to the death of George Floyd or the court actions that resulted

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

from his death.  Plaintiff's expert, Dr. William Smock, served as an expert witness on behalf of the prosecution in the trial of Derek Chauvin.  During his deposition in this case, Dr. Smock repeatedly referred to the George Floyd incident, stating that there were "multiple similarities."

Defendants argue that the facts of this case are in no way similar to the facts surrounding George Floyd's death and are irrelevant.  Defendants also argue that even if there were similarities, references to the widely-publicized death of George Floyd would only serve to unfairly prejudice Defendants by flaming the jury's passions, confusing the issues, misleading the jury, causing undue delay, and wasting time.  They argue that any reference to George Floyd is substantially outweighed by these dangers.

In response, Plaintiff argues that Dr. Smock's experience is relevant to his qualifications and credibility.  She argues that he is permitted to reference the experience upon which he relies. The Court agrees with Plaintiff that Dr. Smock is permitted to mention his work on the George Floyd case with respect to his qualifications and discussing how it aided him in reaching his opinions in this case.  The Court does not find that mention of George Floyd should be excluded under Rule 403.  While the mention of George Floyd could certainly invoke passionate feelings, the

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

feelings are not one-sided.  Further, if Smock mentions the case

with respect to his own qualifications and explaining how it helped

him for his opinion here, the probative value of the evidence is

not "substantially outweighed" by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless

presentation of cumulative evidence.  This conclusion is tempered,

however.  The specific facts and circumstances of the Floyd case

and Smock's conclusions about the Floyd case have such attenuated

relevance to the issues in this case that Rule 403 requires

exclusion.  However, Smock's prior experience and how that prior

experience assisted his work in this matter is admissible.

Defendants will likewise be permitted any otherwise admissible

cross-examination on such matters elicited on direct examination.

For these reasons, Defendants' motion is **DENIED** [ECF No. 142].

    **D.   Plaintiff's Third Motion in Limine [ECF No. 144]**

In Plaintiff's third motion in limine, she asks the Court to

preclude Defendants' expert Wayne Ross's opinions on his review of

the brain tissue slides because the opinions were not timely

disclosed.  She argues that Ross's opinions would unfairly

prejudice her because she was not able to obtain a rebuttal expert.

In response, Defendants argue that Ross's opinions were timely

disclosed, and even if they were not, the untimeliness was harmless

SMITH V. CLARK                                                    2:20-CV-47

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

because Plaintiff had the opportunity to fully explore Ross's opinions during his deposition.[2]  She also had ample time to obtain a consulting expert to assist her in preparing for cross examination at trial.

On July 21, 2021, Defendants informed counsel that they planned to issue a subpoena to the Office of the Chief Medical Examiner for "all" of Smith's medical records and information. Plaintiff objected to the subpoena as drafted.  Defendants modified the subpoena and served it on the Office of the Chief Medical Examiner on August 6, 2021, with a return date of August 20, 2021. Defendants' counsel did not receive the subpoena until late September 2021.

Even though the August 6, 2021-subpoena requested "all" records related to Smith, the Medical Examiner's Office did not produce any tissue samples.  Defendants' counsel learned on October 22, 2021, that the Medical Examiner's Office would require a separate subpoena that specifically requested the tissue samples. On November 8, 2021, Defendants served their expert witness disclosures, including Ross's report, which, of course, did not

---

[2] Defendants argue that because the information was made known to Plaintiff in the discovery process and in writing, there was no obligation to serve a supplemental expert witness disclosure.  To ensure strict compliance with Rule 26, Defendants served a supplemental expert witness disclosure on August 25, 2022.  ECF No. 62.

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

mention the brain tissue slides at the time. Defendants served another notice of subpoena on November 10, 2021, informing counsel that Defendants would subpoena the tissue samples on November 15, 2021. Defendants then served the tissue samples subpoena on November 15, 2021. It is unclear when Defendants' counsel or Ross received the brain tissue slides.

Plaintiff's rebuttal expert deadline was December 30, 2021. The discovery deadline was June 1, 2022. On April 25, 2022, Plaintiff's expert William Smock testified that he disagreed with Ross's opinion. On June 7, 2022, after he had review Smock's deposition testimony, Ross provided Defendants' counsel with microscopic pictures of the slides of pertinent brain tissue samples from Smith's brain, along with a comparison slide from a treatise. Defendants' counsel emailed the information to Plaintiff's counsel the same day. In response, Plaintiff's counsel raised the possibility of rescheduling Ross's deposition, which was scheduled for June 9, 2022, and asked what Ross's opinions were regarding the slides. Defendants' counsel did not object to rescheduling the deposition but nonetheless provided a synopsis of the significance of the slides to Ross's opinions.

Plaintiff's counsel proceeded to take Ross's deposition on June 9, 2022. At the deposition, Plaintiff's counsel reserved her right to re-depose Ross and to submit any needed rebuttal, due to

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

the recent production of the slides.  Defendants' counsel did not object to either a second deposition of Ross or Plaintiff's submission of a rebuttal.  Ross proceeded to testify about the brain tissue slides.  Plaintiff's counsel did not seek to re-depose him or introduce rebuttal evidence.  On August 25, 2022, Defendants served a supplemental expert witness disclosure, which was before the deadline for Rule 26(a)(3) disclosures per an extension granted by the Court.

Under Rule 26 of the Federal Rules of Civil Procedure, parties have a duty to supplement discovery requests and expert witness disclosures in a timely manner if the party learns that the prior disclosure or response was "incomplete or incorrect, and if the additional . . . information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).  Supplemental expert witness information must be disclosed by the time Rule 26(a)(3) pretrial disclosures are due.  Fed. R. Civ. P. 26(e)(2).

If a party fails to provide information as required by Rule 26(a), the party may not use that information as evidence at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Courts in the Fourth Circuit use the following five factors to determine whether a nondisclosure of information is substantially justified or harmless:

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

> (1) the surprise to the party against whom the
> evidence would be offered; (2) the ability of
> that party to cure the surprise; (3) the
> extent to which allowing the evidence would
> disrupt the trial; (4) the importance of the
> evidence; and (5) the nondisclosing party's
> explanation for its failure to disclose the
> evidence.

S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

Defendants argue that Ross's opinions were not incomplete or incorrect, and, therefore, there was no duty to file a supplemental disclosure. His examination of the brain tissue slides did not change his previously disclosed opinions or cause him to form a new opinion; it merely reinforced his previously-disclosed opinion. Defense counsel disclosed the specific information about how the slides supported Ross's opinions as soon as it became known to defense counsel, "in writing," by email two days before Ross's scheduled deposition and also "during the discovery process" at the deposition.

In reviewing the harmlessness factors, Defendants admit that Plaintiff may have been surprised by receiving new information so soon before Ross's deposition. Still, they argue that Ross was not disclosing a new opinion; he was merely using the brain tissue slides to reinforce his opinion that was previously disclosed. Second, Defendants argue that Plaintiff had the ability to cure any surprise. Plaintiff's counsel questioned Ross about the slides

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

in detail during the deposition.  The parties took a number of depositions after the discovery deadline.  Third, Defendants argue that allowing Ross to testify about his brain tissue analysis would not delay or extend the trial in any meaningful way.  Fourth, Defendants argue that the evidence of the lack of significant white blood cells in the areas of the subarachnoid hemorrhages is very important to this matter.  Finally, Defendants argue that their delay was substantially justified because Ross did not receive the brain tissue slides in time for them to be used in his disclosure — and this was because the brain tissue slides were not included with the information gathered from the first subpoena.

This matter has had a tortured procedural history and trial has been continued a number of times.  Any prejudice inflicted upon Plaintiff has certainly dissipated while this case has stumbled toward trial, currently scheduled for February 26, 2024 – over five (5) months from now.  Plaintiff's motion is therefore **DENIED**.  However, to the extent Plaintiff believes additional discovery is necessary to address these issues at trial, leave will be freely granted if such a motion is submitted to the Court. Ample time exists between now and trial for the parties to complete any such discovery efforts.

**E.    Defendants' Second Motion in Limine [ECF No. 146]**

In Defendants' second motion in limine, they ask the Court to

**MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE**

preclude Plaintiff's medical expert, Dr. Smock, from offering opinions on use of force or police procedures.  Defendants argue that in his report, Dr. Smock offered opinions on "the injuries, the injury mechanisms, the forensic and medical issues and the medical facts" of the case.  He did not offer any opinions on the deputies' use of force or the training they received.  During his deposition, however, Dr. Smock was equivocal on whether he might offer opinions on use of force and police procedures, claiming that he has been recognized as a use of force expert in other cases, although he could not name any.  Defendants argue that Dr. Smock is not qualified to serve as an expert on police procedures or use of force.  Defendants argue that Plaintiff already has a use of force expert, so any use of force opinions by Dr. Smock would be cumulative.

In response, Plaintiff argues that Dr. Smock is qualified to provide opinions on excessive use of force.  That said, Plaintiff writes that she does not intend to elicit testimony from Dr. Smock on proper police procedures, unless it would be procedures related to investigating an in-custody death from a medical perspective.

Rule 26 requires that an expert whose opinions may be presented at trial must provide a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).

SMITH V. CLARK                                    2:20-CV-47

## MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

Dr. Smock was not disclosed as an expert on use of force and police procedures, and his report contains no opinions on those subjects. For these reasons, Defendants' motion is **GRANTED** [ECF No. 146].

### F.   Defendants' Third Motion in Limine [ECF No. 147]

In Defendants' third motion in limine, they move the Court to preclude argument or testimony that a reasonable deputy would not use a taser to subdue a fleeing felon who was running over a hard surface.  The Court has already held in its summary judgment order that the individual deputies are entitled to qualified immunity for the excessive force claims to the extent that Plaintiff bases those claims on the use of a taser.  Further, the Court granted summary judgment in favor of the County Commission for the Constitutional claims against it, including the Monell claim and the use of force claims in Counts Eight and Nine.  As such, Defendants' motion in limine is **GRANTED** to the extent that Plaintiff may not argue that the use of a taser was unreasonable [ECF No. 147].

### G.   Defendants' Fourth Motion in Limine [ECF No. 148]

In Defendants' fourth motion in limine, they ask the Court to preclude argument or testimony that a reasonable deputy would not transport an arrestee in a police cruiser to received medical care. In its summary judgment order, the Court declined the invitation to find, under West Virginia law, that law enforcement officers

### MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

have a duty to provide a certain level of medical care to arrestees. Plaintiff has failed to show that such a duty exists, much less the scope of the duty, and she will not be permitted to argue at trial that it exists. For these reasons, Defendants' motion is **GRANTED** [ECF No. 148].

### H.   Defendants' Fifth Motion in Limine [ECF No. 149]

In Defendants' fifth motion in limine, they ask the Court to preclude testimony from Plaintiff's use of force expert, Michael Gerard, that any officer struck Smith on the back of the head. Defendants write that Gerard did not see any such strike on the body camera footage, he did not base his opinions on the assumption that Smith was struck in the back of a head, and it is undisputed that striking an arrestee in the back of the head under this case's circumstances would be unreasonable. Defendants argue that Gerard would be restating the opinions of other experts and that the testimony would be cumulative. In response, Plaintiff writes that as an expert, Gerard is entitled to rely on other evidence in the case, including other experts' opinions.

The Court finds Plaintiff's argument more persuasive. When assessing the use of force claims against the individual deputies, the jury must consider whether the deputies' conduct was reasonable. If the jury finds that Smith was struck in the back of the head, then the jury still needs to hear evidence that such

16

SMITH V. CLARK                                                    2:20-CV-47

### MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

behavior was unreasonable.  Gerard's opinion is sufficiently supported by the facts in the case, and the Court does not find that its "probative value is substantially outweighed by . . . needless presentation of cumulative evidence" under Rule 403.  The parties have not presented the Court with a stipulation that would eliminate the need for this evidence.  For these reasons, Defendants' motion is **DENIED** [ECF No. 149].

### I.  Defendants' Sixth Motion in Limine [ECF No. 150]

In Defendants' sixth motion in limine, they ask the Court to preclude testimony from Plaintiff's use of force expert about medical issues or cause of death.  Defendants argue that in Michael Gerard's report, he offered an opinion that if Smith had been transported to the hospital by ambulance instead of being transported by deputies in a police cruiser, he would have lived.  Yet, at his deposition, Gerard admitted that he has no way to know if Smith would have lived if he had been transported by ambulance.  He indicated that he does not have an opinion on the cause of Smith's death and he does not know what effect the methamphetamine in his blood would have had on his body.

Defendants' toxicology expert will offer the opinion that Smith would have died of methamphetamine intoxication regardless of whether EMS had transported him.  Defendants argue that under Rule 702, Gerard is not qualified to opine on whether Smith would

### MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

have lived if he had been transported by ambulance.  The word "knowledge" in Rule 702 "connotes more than subjective belief or unsupported speculation." Dauber v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993).  By Gerard's own admission, his opinion that Smith would have lived if he had been transported by an ambulance is nothing more than speculation.  Therefore he should not be permitted to offer this opinion to the jury.

In response, Plaintiff argues that Gerard's opinions are within his area of experience and knowledge.  He has experience and knowledge about injuries that occur to a victim when excessive force is used.  Gerard will rely on determinations in the autopsy report, the testimony of the medical examiner, and Dr. Smock (Plaintiff's medical expert) to support his opinions that the excessive force and failure to obtain proper care were the causes of Smith's injuries and death.  Plaintiff argues that this forms a sufficient evidentiary basis for his testimony.  Gerard never testified that he made a medical diagnosis about Smith's death.

The Court finds that there is a sufficient factual basis for Gerard's opinion.  Defendants' concerns constitute cross-examination fodder and do not warrant exclusion.  Defendants' motion is **DENIED.**

### J.  Defendants' Seventh Motion in Limine [ECF No. 151]

In Defendants' seventh motion in limine, they ask the Court

<u>MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE</u>

to preclude testimony that the Sheriff's Department conducted taser training after Smith's death because the training is a remedial measure under Rule 407. Defendants believe that Plaintiff will attempt to introduce evidence of the training at trial to prove that the County Commission was negligent in not requiring annual taser training prior to Smith's arrest and death.

In response, Plaintiff argues that the evidence is admissible because it shows the duty of the County Commission to provide for periodic retraining. In addition, Plaintiff argues that it shows the knowledge of the County Commission, which is essential to proving the County Commission's deliberate indifference.

The Court has already granted summary judgment in favor of the County Commission and dismissed a number of claims against it: the wrongful death claim based on negligent training, supervision, or retention of employees; the wrongful death claim based on negligence of the deputies' medical treatment; the wrongful death claim based on vicarious liability for the EMTs' actions; the <u>Monell</u> claim; and the Constitutional claims in Counts Eight and Nine. The Court has also found that the individual deputies are entitled to qualified immunity to the extent that Plaintiff's use of force claims against them are based on the improper use of a taser. As such, the evidence of taser training after Smith's death is no longer relevant to any claim. For these reasons, Defendants'

SMITH V. CLARK                                              2:20-CV-47

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

motion is **GRANTED** [ECF No. 151].

**K.  Defendants' Eighth Motion in Limine [ECF No. 152]**

In Defendants' eighth motion in limine, they ask the Court to preclude evidence of Sheriff's Department policies "that have no relevance to the issues in this matter." Specifically, Defendants seem concerned about opinions offered by Michael Gerard, Plaintiff's police procedures expert. Gerard opined that the deputies acted contrary to Sheriff's Department policy when they elected to transport Smith to the hospital rather than have him transported by ambulance. Defendants argue that the policy relied upon by Gerard in offering this opinion does not apply to situations involving arrestees who are ill or injured.

In its summary judgment order, the Court declined the invitation to find, under West Virginia law, that law enforcement officers have a duty to provide a certain level of medical care to arrestees. As such, this motion is **GRANTED** [ECF No. 152].

## II.  CONCLUSION

For the reasons discussed above, the Court hereby **ORDERS** the following:

- Plaintiff's First Motion in Limine is **GRANTED IN PART, DENIED IN PART**, and **HELD IN ABEYANCE** in part [ECF No. 139];

- Plaintiff's Second Motion in Limine is **GRANTED IN PART** and **DENIED IN PART** [ECF No. 141];

SMITH V. CLARK                                                    2:20-CV-47

MEMORANDUM OPINION AND ORDER ADDRESSING MOTIONS IN LIMINE

- Defendants' First Motion in Limine is **DENIED** [ECF No. 142];

- Plaintiff's Third Motion in Limine is **DENIED** [ECF No. 144];

- Defendants' Second Motion in Limine is **GRANTED** [ECF No. 146];

- Defendants' Third Motion in Limine is **GRANTED** [ECF No. 147];

- Defendants' Fourth Motion in Limine is **GRANTED** [ECF No. 148];

- Defendants' Fifth Motion in Limine is **DENIED** [ECF No. 149];

- Defendants Sixth Motion in Limine is **DENIED** [ECF No. 150];

- Defendants' Seventh Motion in Limine is **GRANTED** [ECF No. 151]; and

- Defendants' Eighth Motion in Limine is **GRANTED** [ECF No. 152].

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Order to counsel of record.

DATED: September 28, 2023

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA